# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| JAMES WILLIAM KING, II, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | CAUSE NO.: 1:17-CV-191-TLS |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff James William King, II, seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits and supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied his Social Security benefits and erred by overemphasizing his daily activities, failing to acknowledge his good work record, improperly evaluating the evidence of his fibromyalgia, failing to properly consider his obesity in conjunction with his other impairments, and by not ordering a consultative exam.

## BACKGROUND

On October 7, 2013, the Plaintiff filed both a Title II application for disability and disability insurance benefits, and a Title XVI application for supplemental security income. (R. 21.) In both applications, the Plaintiff alleged disability beginning on September 17, 2013. (*Id.*) His claims were denied initially and upon reconsideration. (*Id.*) On August 26, 2015, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ). (*Id.*)

On March 2, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review. (R. 6.)

On May 1, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. §§ 423(d)(2)(A), 1382c(a)(3)(B).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA since his alleged onset date, September 17, 2013. (R. 23.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting his ability to do basic work activities under §§ 404.1520(c) and 416.920(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including degenerative disc disease, other arthropathies, and obesity. (R. 23.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical

demands of work. (*Id.*) The ALJ also found that the Plaintiff had several non-severe impairments, both physical and mental. (R. 23–24.) The ALJ identified mild gastroesophageal reflux disease and non-alcoholic steatohepatitis as non-severe physical impairments, because "they appear well controlled with conservative treatment measures." (*Id.*) The ALJ also identified the Plaintiff's "mental impairment of affective disorder" as non-severe, because it "cause[s] no more than a mild limitation." (R. 24.) The ALJ noted that "[a] tender point examination was not sufficient to establish fibromyalgia as a severe impairment, per SSR 12-2p," but did not explicitly identify fibromyalgia as a non-severe impairment. (R. 24.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . ." §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." §§ 404.1520(d), 416.920(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" ("RFC")—the types of things he can still do physically, despite his limitations—to determine whether he can perform "past relevant work," (§§ 404.1520(a)(4)(iv), 416.920(A)(4)(iv)), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in appendix 1 and that he had the RFC to "perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)," with certain exceptions. (R. 25.)

The ALJ concluded that the Plaintiff was not disabled as of his alleged onset date. (R. 18–32.) The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 30.) But the ALJ found that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id.*)

The ALJ afforded the Plaintiff's wife's testimony at the hearing little weight. (*Id.*) Instead, the ALJ relied on the third party function reports prepared by the Plaintiff and his wife in December 2013. (*Id.*) However, both the Plaintiff and his wife testified that the Plaintiff's condition had deteriorated significantly in the 21 months since completing the third party function reports. (R. 30, 31.) The ALJ discounted this explanation, stating that "[d]ue to the marked discrepancy between the third party function report and the wife's testimony, the undersigned does not find the wife's allegations fully credible." (R. 30.) The ALJ further stated that, "the record does not reflect [that the Plaintiff has deteriorated] . . . [o]n the contrary, the medical records indicate the claimant has recently begun babysitting his newborn niece two days per week. Diagnostic imaging is normal . . . The bulk of the clinical examinations are relatively normal," and concluded by "finding notable the fact the claimant's physical therapist opined the claimant's subjective complaints far outweighed objective findings and discharged the claimant from therapy." (R. 31.) The ALJ did not cite any other portion of the record as inconsistent with the Plaintiff's testimony.

The ALJ stated that, due to the combination of the Plaintiff's "mild" degenerative disc disease and his "subjective" complaints of various arthropathies, "compounded by obesity," the Plaintiff's RFC was limited to light work with "postural and environmental limitations." (*Id.*)

4

The ALJ added that the RFC "is consistent with the claimant's activities of daily living, including caring for multiple small children and pets, doing laundry, preparing meals, vacuuming, and doing dishes. There is no objective evidence to support additional limitations." (*Id.*) The ALJ appears to have drawn these daily activities from the third party function report and the medical records. Ultimately, the ALJ concluded that "the collective evidence does not support a finding that the [Plaintiff]'s conditions are of such a disabling nature that they would, singly or in combination, prevent the performance of the residual functional capacity assessment." (R. 32)

The Plaintiff has past relevant work as a cashier, which is unskilled, light work. (*Id.*) The ALJ found that the Plaintiff could perform his past relevant work. (*Id.*) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of his alleged onset date. (R. 29.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's findings of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**ANALYSIS**

The Plaintiff argues that the ALJ erred by overemphasizing his daily activities, failing to acknowledge his good work record, improperly evaluating the evidence of his fibromyalgia, failing to properly consider his obesity in conjunction with his other impairments, and by not ordering a consultative exam.

The Plaintiff's argument regarding daily activities has two components: first, that the ALJ dismissed the testimony regarding the Plaintiff's deterioration as not credible without adequate discussion, and second, that even if the third party function reports were accurate descriptions of the Plaintiff's daily living, the ALJ overly relied upon those reports without considering the assistance and modifications he required to perform the activities involved.

**A.      Credibility Determination**

The Court may not overturn the ALJ's credibility determination unless it is "patently wrong." *See Elder*, 529 F.3d at 413–14. "An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder v. Astrue*, No. 3:09-CV-363, 2010 WL 2243248, at *4 (N.D. Ind. June 1, 2010) (citing *Craft*, 539 F.3d at 678). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (citing *Terry*, 580 F.3d at 477); *Salaiz v. Colvin*, 202 F. Supp. 3d 887, 893 (N.D. Ind. 2016). The determination of credibility

"must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft*, 539 F.3d at 678.

Social Security "regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a bases for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). "The ALJ should not mechanically recite findings on each factor, but must give specific reasons for the weight given to the individual's statements." *Evans v. Astrue*, No. 3:10-CV-432, 2012 WL 951489, at *11 (N.D. Ind. Mar. 20, 2012).

In discounting the testimony from the Plaintiff and his wife regarding his current condition, the ALJ says only that such testimony is unsupported by the record. Additionally, even when considering only the third party function reports as evidence of the Plaintiff's daily activities, the ALJ failed to consider the assistance the Plaintiff required to complete those tasks.

### 1. *Objective Medical Evidence*

The only explicit reason the ALJ gives for discounting the subjective testimony is that the medical record does not support it. But, the Seventh Circuit, and this District, have rejected this approach. *See, e.g.*, *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it."); *accord Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009); *see also Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ cannot reject a claimant's testimony about limitations on [his] daily activities solely by stating that such

8

testimony is unsupported by the medical evidence."); *Salaiz*, 202 F. Supp. 3d at 893–94 ("The ALJ erred when assessing the Plaintiff's credibility because she relied entirely on medical evidence . . . ."); *Vercel v. Colvin*, Case No. 2:15-CV-81-JEM, 2016 WL 1178529, at *4 (N.D. Ind. Mar. 28, 2016) (Although the "ALJ is not required to give full credit to every statement of pain made by the claimant . . . a claimant's statements regarding symptoms or the effect of symptoms on his ability to work 'may not be disregarded solely because they are not substantiated by objective evidence.'") (quoting SSR 96-7p at *6). "[T]he whole point of the credibility determination is to determine whether the claimant's allegations are credible *despite* the fact that they are not substantiated by the objective medical records." *Stephens v. Colvin*, No. 1:13-CV-66, 2014 WL 1047817, at *9 (N.D. Ind. Mar. 18, 2014) (emphasis in original). Thus, because medical records are all the ALJ explicitly cites in support of his decision to find the hearing testimony not credible, remand is appropriate.[1]

The ALJ also states that, "[d]ue to the marked discrepancy between the third party function report and the wife's testimony, the undersigned does not find the wife's allegations fully credible." (R. 30.) To the extent that the hearing testimony was contradicted by the third party function reports, such a contradiction might have fairly contributed to the ALJ's decision.

---

[1] Even when relying on the medical record, the ALJ cherry-picks facts that support a finding of non-disability while ignoring evidence to the contrary. For example, the ALJ says "the medical records indicate the claimant has recently begun babysitting his newborn niece two days per week," but the medical record as described earlier in the ALJ's own decision states, "[the Plaintiff] had been babysitting for his newborn niece five days per week but he had complained to the point that the baby was now in daycare three days a week." (R. 31, 30.) The ALJ also says, "[t]he [Plaintiff] walks with a cane but he reports to medical providers that it is not always necessary." (R. 31.) However, the medical record states, "he used his cane 70% of the time," had a prescription for it, and "[found] it helpful on days when he was completing numerous tasks." (R. 28, 30.) Finally, the ALJ "finds notable" that the Plaintiff's physical therapist thought the Plaintiff's complaints subjective, but does not address that the physical therapist saw the Plaintiff in September 2013. Such cherry-picking is impermissible. *See Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) ("An ALJ cannot rely only on the evidence that supports [his] opinion."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

*See Powers v. Apfel*, 207 F.3d 431, 433 (7th Cir. 2000) ("the minor discrepancy combined with the hearing officer's observations of the witness during testimony does provide some small support for a finding of incredibility.") However, the hearing testimony and the third party reports contain no such contradiction. The Plaintiff and his wife explained that his condition deteriorated, and the ALJ does not "articulate specific reasons for discounting" that testimony.[2] *Schmidt*, 395 F.3d at 746–47; *see also Myles*, 582 F.3d at 677 ("We will remand an ALJ's determination that lacks adequate discussion of the issues."). The Court cannot say that the ALJ built a logical bridge regarding the Plaintiff's credibility and is therefore unable to meaningfully review the ALJ's analysis.

## 2.     *Daily Living Activities*

The Plaintiff argues that, even assuming the hearing testimony was properly discounted, the ALJ placed undue weight on his ability to conduct daily living activities without considering the assistance he required to perform them. The ALJ noted that "the claimant's activities of daily living includ[ed] caring for multiple small children and pets, doing laundry, preparing meals, vacuuming, and doing dishes." (R. 25.) The tasks articulated are drawn largely from the third party function reports.

The Seventh Circuit has emphasized that there are "critical differences between activities of daily living and activities in a full-time job" including flexibility in scheduling, possible help

---

[2] The Defendant offers possible specific reasons, for example that the Plaintiff had lost approximately 50 pounds in the year preceding the hearing, which the Defendant argues "makes it particularly unlikely that his condition worsened during that time." (Def. Resp. at 6, ECF No. 21). However, the ALJ does not articulate this or any other reason for discounting the testimonial explanation for the discrepancy he identifies, and the "court's review is limited to the reasons and logical bridge articulated in the ALJ's decision, not the post-hoc rationale submitted in the Commissioner's brief." *Toft v. Colvin*, No. 08 C 2861, 2013 WL 2285786, (N.D. Ill. May 23, 2013) (citing, among others, *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)).

from family members, and lack of minimum performance standards; and "[t]he failure to recognize these differences is a recurrent . . . feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

In this case, the ALJ failed to consider the modifications and assistance that the Plaintiff required to complete the referenced daily activities. For example, the Plaintiff's wife indicated in her third party function report that the Plaintiff "helps [her] get the children fed and ready for school," that he can cook "already prepared meals such as frozen foods," and that she sometimes must "help him vacuum or fold laundry." (R. 260, Ex. No. 3E.) The ALJ thus "ignored [the] qualifications as to *how* [he] carried out those activities," even in evidence the ALJ did consider credible and to which the ALJ afforded greater weight. *Craft*, 539 F.3d at 660 (emphasis in original). Courts have repeatedly found fault with decisions where the ALJ noted that the claimant could perform daily activities but failed to examine the physical or mental consequences of performing those activities and the claimant's need for assistance or modifications. *Sneed v. Berryhill*, No. 2:16-CV-195, 2017 WL 4325303, at *3 (N.D. Ind. Sept. 29, 2017) ("If the ALJ wishes to hold Plaintiff's daily activities against her, he must . . . discredit Plaintiff's claims of how much her children help with the activities."); *Herrold v. Colvin*, No. 2:13-CV-360, 2015 WL 1243293, at *6 (N.D. Ind. Mar. 17, 2015) ("[T]he Seventh Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores.") (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)). Thus, the ALJ's failure to account for the assistance and modifications the Plaintiff requires to perform daily living activities is an independently sufficient reason for remand.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case. Because the Court is remanding on these issues, it need not consider the remainder of the parties' arguments; however, the ALJ is encouraged to examine whether the Plaintiff's fibromyalgia is a medically determinable impairment, and if so, which type, as well as more fully articulate any consideration the ALJ gives to the combination of the Plaintiff's obesity with his other impairments.

SO ORDERED on June 18, 2018.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
